UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RAMON CLARK,                        )
                                    )
    Plaintiff,                      )
                                    )
    v.                              )          13-CV-3012
                                    )
CORRECTIONAL OFFICER                )
ROBERT A. GIPSON,                   )
CORRECTIONAL OFFICER                )
VERNON DEWITT, and                  )
LIEUTENANT MIKE SAATHOFF,           )
                                    )
    Defendants.                     )

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

On February 15, 2013, this Court conducted a merit review of Plaintiff's complaint and determined that Plaintiff stated constitutional retaliation claims based on Plaintiff's allegations that: (1) Officer DeWitt withheld Plaintiff's reassignment as a peer educator in retaliation for Plaintiff's challenge to DeWitt's disciplinary report written on February 13, 2012; (2) Officer Gipson wrote Plaintiff two false disciplinary reports in retaliation for a note Plaintiff wrote to Nurse Puckett; and, (3) Lieutenant Saathoff and

Officer Gibson retaliated against Plaintiff for Plaintiff's refusal to act as an informant. (2/15/13 order.) Defendants' motion for summary judgment is before the Court.

The Court holds that Plaintiff's note to Nurse Puckett was not protected First Amendment speech because the note was reasonably construed as an attempt to create staff conflict and to interfere with internal affairs investigations. The Court also holds that Plaintiff had no constitutional right to refuse to act as an informant as a condition of obtaining a prison job. Alternatively, Defendants are protected by qualified immunity on these claims. The retaliation claim against Officer DeWitt survives for further development.

The Court's determination of qualified immunity is immediately appealable. *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 667 (7th Cir. 2012). Counsel will be appointed for Plaintiff to explore this possibility and to otherwise represent Plaintiff in this case.

# FACTS

These facts are set forth in the light most favorable to Plaintiff, construing inferences in Plaintiff's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In the Fall of 2011, Plaintiff was assigned as a "peer educator" in the health care unit of Graham Correctional Center.  According to Plaintiff, his duties included educating and counseling other inmates about diseases like HIV, AIDs, hepatitis, sexually transmitted diseases, and alcohol addiction.  (Pl.'s Dep. p. 8.) Nurse Puckett was Plaintiff's primary supervisor and was responsible for staffing the peer educator position, though others had to approve Nurse Puckett's choice for the job.

In addition to his job as a peer educator, Plaintiff worked as a "zone 2 lieutenant clerk."  His duties as a clerk included picking up "movement sheets" from placement officers and passing the sheets out to officers on the appropriate housing units.  (Pl.'s Dep. p. 12.) In discharging these duties, Plaintiff picked up movement sheets from Defendant Officer DeWitt on a daily basis.  Lieutenant Ketcherside, who is not a Defendant, was Plaintiff's supervisor for this position.  (Pl.'s Dep. p. 11.)

Plaintiff felt that Officer DeWitt did not like Plaintiff and, according to Plaintiff, DeWitt repeatedly made unspecified harassing and threatening comments to Plaintiff when Plaintiff would pick up the movement sheets.  (Pl.'s Aff. para. 6, d/e 50-1.) Plaintiff complained to Lieutenant Ketcherside about Officer DeWitt's comments, to which Ketcherside responded, "Look, all you got to do, go in there and pick up your paperwork and just leave." (Pl.'s Dep. p. 19.)

Plaintiff believes that Lt. Ketcherside spoke to Officer DeWitt about Plaintiff' s complaints because at some point DeWitt warned Plaintiff, "It's only a matter of time before I get you."  (Pl.'s Dep. pp. 20, 23.)  After DeWitt's purported threat, Plaintiff's name was put on a movement sheet to be moved out of Plaintiff's cell.  The move was stopped by Lt. Ketcherside or Defendant Saathoff. (DeWitt's Admissions, d/e 50-1 p. 1.)  Then, Plaintiff's cell mate was moved out of Plaintiff's cell.

On or around February 13, 2012, Plaintiff was placed in segregation on investigative status regarding a disciplinary report written by Defendant DeWitt which accused Plaintiff of insolence and disobeying a direct order.  DeWitt wrote that Plaintiff had

disobeyed DeWitt's order to stop meddling in placement matters. According to DeWitt's disciplinary report, Plaintiff had told another correctional officer that DeWitt's plan to move an inmate was improper because the inmate was a porter.[1] (Disciplinary report, d/e 50-2, p. 4; Pl.'s Dep. p. 12.) Plaintiff admits that he told DeWitt that the inmate scheduled to be moved was a porter, that DeWitt then "got smart and said what he said," and that then Plaintiff told an officer by the name of Goodman about DeWitt's plan to move an inmate porter. (Pl.'s Dep. p. 12.)[2] After DeWitt's plan to move the inmate porter was scotched, DeWitt wrote the disciplinary report against Plaintiff.

On or about February 21, 2012, Plaintiff was released from segregation. He discovered that he had not been reassigned to his peer educator position. Three days later, Plaintiff and Nurse Puckett asked Officer DeWitt why Plaintiff had not been reassigned to the position. According to Plaintiff, Officer DeWitt said that Plaintiff could not be reassigned until "additional clearance" was obtained. Plaintiff believes that Officer DeWitt concocted this

---

[1] The parties do not explain why an inmate assigned as a porter cannot be moved to a different cell.
[2] Whether Officer Goodman or an officer by the name of McDowell spoke to DeWitt to stop the move is unclear.

explanation to cover up DeWitt's desire to retaliate against Plaintiff for Plaintiff's opposition to DeWitt's disciplinary report.

Plaintiff continued to inquire about the peer educator position, at which point Lieutenant Saathoff, who worked in internal affairs, told Plaintiff that Plaintiff would have to "watch and snitch on the nurses" if Plaintiff wanted to work as a peer educator. According to Plaintiff, Lieutenant Saathoff had investigated the nurses while Plaintiff had been a peer educator and Lieutenant Saathoff had expressed to Plaintiff that Saathoff thought something improper was going on in the health care unit.

This was not the first time that Lieutenant Saathoff insisted that Plaintiff be an informant if Plaintiff wanted a job. Plaintiff testified in his deposition that Lieutenant Saathoff had also asked Plaintiff to be an informant before Plaintiff's assignment as a zone 2 lieutenant clerk.

Plaintiff refused to act as an informant in either position. Lt. Saathoff's purported efforts to block Plaintiff from working as the zone 2 lieutenant clerk were unsuccessful, but Saathoff was able to prevent Plaintiff's reassignment as a peer educator.

On March 4, 2012, Plaintiff addressed a note to Nurse Puckett on an inmate request form, stating:

> Due to the way I have been egregiously victimized by c/o DeWitt and Lt. Saathoff's abuse of authority, I feel that the only way to avoid them is to go on a hunger strike in an attempt to get shipped out of Graham. Before I do this, you need to know that the main reason Lt. Saathoff is trying to stop me from becoming the HCU Instructor is because I refused to spy on the nurses. I told him, "I'm not snitching on them nurses." This is the main reason my name was removed from the list. He told me if I said anything he would make my time here a living hell. A/W Davis need[s] to be notified of this. He's gone too far by removing a peer educator because he won't snitch on the nurses.

(d/e 46-5, p. 1; 50-1, p. 17.)

Whether Nurse Puckett received Plaintiff's note is not in the record. Somehow the request wound up in the internal affairs mailbox on the morning of March 7, 2012. That morning, Officer Gipson, who worked in internal affairs, called the clothing room looking for Plaintiff because Plaintiff had received a call pass to go to the clothing room. After learning that Plaintiff had left the clothing room at 8:56 a.m., Officer Gibson found Plaintiff at 9:09 a.m. in the foyer of the health care unit, talking to Nurse Puckett. Officer Gipson asked Plaintiff if Plaintiff had authored the letter to Nurse Puckett. When Plaintiff answered yes, Gipson told Plaintiff,

"Your ass is out of here. You're going to learn not to impede on our investigation." (Pl.'s Dep. p. 30.)

Officer Gipson wrote Plaintiff two disciplinary tickets that day (March 7, 2012). One disciplinary report charged Plaintiff with dangerous communications and giving false information based on Plaintiff's note to Nurse Puckett,. (Disciplinary report, d/e 46-9, p. 1.) The other disciplinary report was for unauthorized movement, based on Plaintiff being in the health care foyer when his pass card was for the clothing room. (Disciplinary report, d/e 46-8, p. 1). These two disciplinary reports caused Plaintiff to be put back in segregation and ultimately led to Plaintiff's disciplinary transfer to Illinois River Correctional Center. (Adj. Com. Final Sum Report, d/e 46-10, p. 1.) The following October, Plaintiff succeeded in getting all three disciplinary reports completely expunged, but Plaintiff remains in the Illinois River Correctional Center, a less desirable prison according to Plaintiff, without a job assignment. (Admin. Rev. Bd. Letters, d/e 50-1, pp. 16, 25.)

## ANALYSIS

**I. Plaintiff had no First Amendment right to send a note to Nurse Puckett accusing Defendants DeWitt and Saathoff of "egregiously victimizing" Plaintiff and telling Nurse Puckett that Defendant Saathoff had insisted that Plaintiff "spy on the nurses" if Plaintiff wanted a peer education job in the health care unit.**

Prisoners have First Amendment rights, but only those First Amendment rights which are consistent with the legitimate objectives of prison officials. Pell v. Procunier, 417 U.S. 817, 822 (1974)("[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.").

Prisoners have a First Amendment right to alert others about a prison official's misconduct, but they must do so in an appropriate way to the appropriate audience. For example, a prisoner has no First Amendment right to speak to a prison employee in a "confrontational, disorderly manner." Watkins v. Kasper, 599 F.3d 791, 797-98 (7th Cir. 2010); *see also* Holleman v. Penfold, 501 Fed.Appx. 577, 2013 WL 647313 (7th Cir. 2013)(not published in Federal Reporter)(prisoner's confrontational refusal to obey lock up order as a protest to short meal time was not a First Amendment protected activity). A prisoner has no First Amendment right to use

insulting, threatening, or false language, even if couched in a prison grievance or a letter.  *See, e.g.,* Hale v. Scott, 371 F.3d 917 (7th Cir. 2004)(inmate had no protected First Amendment right to state libelous rumor in grievance that officer was engaging in sexual misconduct); Ustrak v. Fairman, 781 F.2d 573, 580 (7th Cir. 1986)(inmate's letter calling officers "stupid lazy assholes" and inviting officers to "bring their fat asses around the gallery" not protected speech); Felton v. Huibregtse, 2013 WL 2249536 (7th Cir. 2013)(not published in Federal Reporter)(inmate's letter to warden outside of grievance process stating "any idiot could see" was not protected speech).  A prisoner has no First Amendment right to challenge prison conditions in a manner which creates security risks, such as circulating a petition.  *See* May v. Libby, 256 Fed.Appx. 825, 829 (7th Cir. 2007)("Banning petitions to maintain control over group activity by prisoners is a reasonable response to a legitimate penological concern.")(not published in Federal Reporter)(*citing* Westefer v. Snyder, 422 F.3d 570, 575 (7th Cir. 2005)(no right to belong to prison gang).

In the Court's opinion, Plaintiff's note to Nurse Puckett was reasonably interpreted as an attempt to interfere with an internal

affairs investigation and an attempt to create conflict between Nurse

Puckett and Defendants Gipson and Saathoff.  Plaintiff's note

alerted Nurse Puckett that Saathoff wanted an informant in her

office.  That alert jeopardized any potential investigation by

Saathoff.  Plaintiff does not explain why he had to notify Nurse

Puckett of the plans of the internal affairs office.

Plaintiff's note could also reasonably be interpreted as an

attempt to undermine the working relationship between Defendants

Saathoff, DeWitt, and Nurse Puckett, or an attempt to manipulate

Nurse Puckett into trying to overturn the decision that Plaintiff

would not be reassigned to the peer educator position.  Whether

Plaintiff intended his note to be interpreted this way or whether the

disciplinary committee or administrative review board interpreted

the note that way is not the question.  The question is whether the

note could reasonably be interpreted as inimical to legitimate prison

objectives.  If so, then deference is owed to Defendants for

interpreting the note in that manner.  "[J]udges sensibly defer

within broad limits to the judgments of prison administrators."

Toston v. Thurmer, 689 F.3d 828, (7th Cir. 2012)(disciplining

inmate for posting Black Panther 10-point plan was within prison

officials' discretion even though inmate had been approved to have the book which contained the list.); May v. Libby, 256 Fed.Appx. 825 (7th Cir. 2007)(not published in Federal Reporter)(affirming judgment for defendants where defendants reasonably interpreted a prisoner's copying a future defendant on a letter as a "veiled threat.")

Plaintiff argues that he used the appropriate channels when he wrote his note to Nurse Puckett because she was his supervisor for the peer educator position. But Plaintiff admits that he was no longer a peer educator when he wrote the note, so Nurse Puckett was no longer his supervisor. Plaintiff had other avenues available to alert officials if he thought he was being treated improperly. He could have filed a grievance, written a letter to the Warden, or, as Plaintiff suggested in his note to Nurse Puckett, notified Assistant Warden Davis. If Plaintiff had filed a grievance about the peer educator job, he would have been engaging in First Amendment activity protected from retaliation.

## II.    Plaintiff had no constitutional right to refuse to act as an informant as a condition of being assigned as a peer educator in the prison health care unit.

This Court did not find a Seventh Circuit case directly deciding whether a prisoner has a constitutional right to refuse to act as an informant in the prison setting. Skipping to the qualified immunity analysis, as Defendants do in their motion, is tempting, but this kind of claim will likely occur again, so to prevent "constitutional stagnation," the Court will grapple with whether Plaintiff's constitutional rights were actually violated. Pearson v. Callahan, 555 U.S. 223, 232 (2009).

The Fifth Amendment to the U.S. Constitution protects Plaintiff from being forced to implicate himself criminally.[3] *See* Atwell v. Lisle Park Dist., 286 F.3d 987, 990 (7th Cir. 2002)(Fifth Amendment precludes government from demanding that public employee answer questions in criminal investigation or be fired). But here the Fifth Amendment does not apply because there is no suggestion that Plaintiff feared any criminal charges against himself.

---

[3] The Fifth Amendment does not preclude prison officials from drawing adverse inferences from a prisoner's silence in disciplinary proceedings. Baxter v. Palmigiano, 425 U.S. 308 (1976)(prisoner's silence at disciplinary hearing could be used against him to support prison disciplinary findings). However, if a prisoner is exercising his Fifth Amendment right, the prisoner cannot be punished severely solely for his silence. *See* Castillo v. Johnson, 2014 WL 4476231 (7th Cir. 2014)(not published in Federal Reporter).

The Fourteenth Amendment due process clause is not applicable here either. Prisoners have no liberty or property right in getting or keeping a prison job. <u>DeWalt v. Carter</u>, 224 F.3d 607, 613 (7th Cir. 2000)(prisoners have no liberty or property interest in prison jobs)(citing <u>Wallace v. Robinson</u>, 940 F.2d 243 (7th Cir. 1991).

However, the First Amendment might provide the source of the right Plaintiff seeks. Some First Amendment cases discuss the right "not to speak," but those cases typically involve government-compelled ideological speech. <u>Wooley v. Maynard</u>, 430 U.S. 705 (1977)(New Hampshire cannot require its citizens to display "live free or die" logo on license plates); <u>West Virginia State Bd of Education v.</u> Barnette, 319 U.S. 624 (1943)(public school students cannot be compelled to recite pledge of allegiance and salute flag). But this is not a case of "compelled expression"; Plaintiff was not required to support a government message. <u>Johanns v. Livestock Marketing Ass'n</u>, 544 U.S. 550, 557 (2005)(explaining categories of compelled speech claims).

To the extent a First Amendment right not to speak exists, the Court holds that the right does not extend to refusing to act as an

informant as a condition of receiving a prison job. Why should inmates have such a right when public employees do not? Many public employees must "inform" on their colleagues' misconduct, even at their own peril. *See, e.g.,* <u>Garcetti v. Ceballos</u>, 547 U.S. 410 (2006); <u>Swearnigen-EL v. Cook County Sheriff's Dept</u>., 602 F.3d 852 (7th Cir. 2010)(no First Amendment claim when public employee was fired for disclosing corruption, even though disclosure was required by general order requiring employees to report any corrupt situation); 20 Ill.Admin.Code 112.30(requiring Department of Corrections employees to report "any unusual incident"); 20 Ill.Admin. Code 112.35 (IDOC employees "shall be required to cooperate with all investigations."); *see also* <u>In re Himmel</u>, 125 Ill.2d 531 (1988)(suspending attorney for not reporting another attorney's misconduct).

Or, consider another comparison. Prosecutors often offer leniency to a criminal defendant if the defendant gives information about others' criminal activity. Offering a job to a prisoner in return for acting as an informant is a similar approach.[4]

---

[4] Even if Plaintiff does have a First Amendment right to refuse to act as an informant, that right would still be subject to the legitimate penological concerns of the prison, just like any other First Amendment right in the prison setting. <u>Shaw v. Murphy</u>, 532 U.S. 223, 230 (2001)("Turner provides the test for evaluating prisoners' First

The First Amendment, therefore, does not help Plaintiff, but the Eighth Amendment might.  If requiring a prisoner to act as an informant puts the prisoner at a substantial risk of serious harm, an Eighth Amendment claim would arise.  Acting as an informant in the prison setting could be risky.  *See* Merritte v. Kessel, 561 Fed. Appx. 546 *3 (7th Cir. 2014)(not published in Federal Reporter)("Branding an inmate a snitch can expose him to serious harm and may violate the Eighth Amendment.")

However, in this case Plaintiff was not labelled a snitch or required to be an informant.  He was free to refuse to take the job, which he did.[5]  Nor did Lt. Saathoff make Plaintiff's life a "living hell," which would independently be actionable under the Eighth Amendment as cruel and unusual punishment, regardless of the informant issue.[6]  The Eighth Amendment, like the First Amendment, does not help Plaintiff on these facts.

---

Amendment challenges, . . .").  Prison officials have a legitimate interest in rooting out corruption, illegal activity, or the abuse of authority by prison employees.  Insider information is an important way to uncover that misconduct.  Therefore, conditioning the receipt of a prison job on acting as an informant is reasonably related to the legitimate government interest of preventing illegal or unethical conduct by prison employees.

[5] The wisdom of conditioning a prison job on being an informant is debatable, since once word gets out, no inmate will likely want the job, but the wisdom of the approach is not at issue.

[6] What if the alleged retaliation is more adverse than the loss of a prison job?  For example, what if a prisoner is put in segregation for refusing to act as an informant against his cellmate?  Arguably no constitutional claim would arise unless the prisoner had some kind of independent constitutional right to refuse to act as an informant.  On the other hand, an argument can also be made that at some point the coercion may become severe enough to implicate the Eighth Amendment, even if the adverse action alone would not be unconstitutional. That question is

**III. Even if Plaintiff did have a constitutional right to send the letter to Nurse Puckett or to refuse to be an informant as a condition of his prison job, neither right was clearly established. Defendants are therefore entitled to qualified immunity.**

Defendants are entitled to qualified immunity unless their conduct "'violate[d] clearly established statutory or constitutional rights of which a reasonable person would have been aware.'" Hernandez v. Foster, 657 F.3d 463, 473 (7th Cir. 2011)(quoted cite omitted). "Clearly established" means "'*every* reasonable official would have understood that what he is doing violates that right.'" Id. (quoted cite omitted)(emphasis added). "'[E]xisting precedent must have placed the statutory or constitutional question beyond debate.'" Id. (quoted cite omitted).

According to the Court's research, the Seventh Circuit has not decided whether a prisoner has a constitutional right to refuse to act as a prison informant. *See* Pearson v. Welborn, 471 F.3d 732, 740 (7th Cir. 2013)(not addressing issue because verdict sustained on other grounds)("Regardless whether Pearson's refusal to act as an informant is constitutionally protected, his complaints about [prison conditions] are . . . ."). The Fifth Circuit appears to have

---

not before the Court today. Today the Court decides only that a prisoner does not have a constitutional right to refuse to act as an informant as a condition of accepting a prison job.

held, in unpublished decisions, that a prisoner does not have that right.  <u>Lando v. Lamartiniere</u>, 515 Fed.Appx. 257 *1 (5th Cir. 2013)(prisoner failed to identify specific constitutional right to refuse to be an informant); <u>Thomas v. Thomas</u>, 46 Fed.Appx 732 (5th Cir. 2002)(affirming dismissal of prisoner's claim that false disciplinary charges were filed against him in retaliation for his refusal to inform against the Muslim community).  The Court found some district courts around the country which have reached the same conclusion.  <u>Wilcher v. Raemisch</u>, 2014 WL 3509395 (W.D. Wis.)(not deciding, but noting "the weight of authority probably supports defendants' view that the refusal to answer legitimate investigatory questions in a prison is not protected speech."); <u>Collins v. Borough of Trainer</u>, 2014 WL 2978312 (E.D. Pa.)(no First Amendment retaliation claim stated where plaintiff alleged that criminal charges were brought against him in retaliation for his refusal to act as an informant—comparing claim to one for vindictive prosecution); <u>Ayala v. Harden</u>, 2012 WL 4981269 (E.D. Cal. 2012)("Refusal to become an informant is not a protected First Amendment activity."); <u>Hermosillo v. Santa Clara County</u>, 2008 WL 2156994 *2 (N.D. Cal.)("[t]he Court is not aware of any [authority],

that the refusal to cooperate with jail officials as an informant for their investigations is a constitutionally protected activity."); <u>Canosa v. State of Hawaii</u>, 2007 WL 128849 (D. Hawaii)("The act of refusing to provide information about fellow inmates is not "protected conduct" under the First Amendment.")(report and recommendation); <u>Clardy v. Mullens</u>, 2012 WL 5188012 (E.D. Mich. 2012)(citing <u>Canosa</u> and <u>Hardeman v. Quarterman</u>, 2010 WL 3782843 (E.D. Tex.)).

The Court's nonexhaustive research did uncover a district court in Arkansas finding the right exists, but without discussion. <u>Watson v. Norris</u>, 2007 WL 4287840 (E.D. Ark. 2007)(A prisoner's "choosing not to speak, regardless whether he did so to protect a confederate or simply because he did not have knowledge of the information the Defendants sought, is an exercise of his First Amendment rights.")(no authority cited).  Additionally, a similar claim got to summary judgment in a California district court, but the case was ultimately decided on other grounds.  <u>Sims v. Veal</u>, 2009 WL 2868718 n. 10 (E.D. Cal, Magistrate Judge Rept. and Rec.); *see also* <u>McGuire v. Hrabe</u>, 2008 WL 4305437 *3 (D. Kansas)(claim got to summary judgment, but case decided on other

grounds).  These few examples where the claim survived for further development are far from enough to clearly establish a right to refuse to act as an informant.

In light of the lack of precedent on the informant claim, the Court concludes that Defendants are entitled to qualified immunity. The same conclusion is reached regarding Plaintiff's note to Nurse Puckett.  Given the Seventh Circuit precedent discussed above holding that prisoners cannot exercise their rights to communicate in a way which disrupts prison administration or safety, no reasonable prison official would have been on notice that disciplining Plaintiff for the note violated Plaintiff's rights.

**IV.  The Court needs more information to determine whether Plaintiff's retaliation claims against Defendant DeWitt survive summary judgment.**

Plaintiff's deposition and response to the summary judgment motion disclose allegations he did not make in his complaint regarding Defendant DeWitt's disciplinary report.  Plaintiff now maintains that DeWitt wrote the report in retaliation for Plaintiff's complaints to Lieutenant Ketcherside about DeWitt's behavior.

Plaintiff asserted in his deposition that DeWitt told Plaintiff he was going to "get him" for those complaints.

These allegations were not in the complaint, and the Court specifically held in its merit review that Plaintiff had not stated a retaliation claim based on DeWitt's disciplinary report, since the alleged retaliation occurred after the report. Plaintiff did not amend his complaint or move to reconsider the merit review order.

Generally, new claims cannot be added in response to a summary judgment motion. <u>Anderson v. Donahoe</u>, 699 F.3d 989, 997 (7th Cir. 2012)("[A] plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'")(quoted cite omitted). On the other hand, evidence about the disciplinary report will come in regardless, and Plaintiff gave notice of these allegations in his deposition. Defendants will be given an opportunity to inform the Court whether this claim is properly before the Court, and, if the Court decides to include the claim, if they need any additional discovery.

Also, a problem exists with the retaliation claim against DeWitt that the Court *did* identify in its merit review. Plaintiff claims that DeWitt somehow acted to block Plaintiff's reassignment as a peer

educator in retaliation for Plaintiff's opposition to DeWitt's disciplinary report. However, Plaintiff maintains in his response that Saathoff was the person responsible for blocking Plaintiff's reassignment, and DeWitt avers that Warden Murray gave the order. The Court does not understand what role DeWitt played in blocking Plaintiff's consideration for the job other than to follow directions from his superiors. This needs to be clarified for the Court to determine whether a justiciable dispute of fact exists.

**IT IS ORDERED:**

1. Defendants' motion for summary judgment is granted in part and denied in part (45).

2. Summary judgment is granted to Defendants on Plaintiff's claims that he was retaliated against for his letter to Nurse Puckett and/or for refusing to act as an informant as a condition of obtaining a job as a peer educator. Plaintiff's letter and refusal to act as an informant were not constitutionally protected actions under the facts of this case. In the alternative, Defendants are entitled to qualified immunity on these claims.

3. Determinations of qualified immunity are generally immediately appealable within 30 days of entry of the order. Fed. R. App. 4(a)(1)(A).

4. Defendants' motion for summary judgment on Plaintiff's remaining retaliation claims against Defendant DeWitt is denied, with leave to renew by March 30, 2015, addressing:

   a. Whether Plaintiff's claim that DeWitt wrote the February 13, 2012 disciplinary report in retaliation for Plaintiff's complaints to Lieutenant Ketcherside is properly before the Court.

   b. Assuming that Plaintiff's claim that DeWitt wrote the February 13, 2012 disciplinary report in retaliation for Plaintiff's complaints to Lieutenant Ketcherside is properly before the Court, whether a disputed question of fact exists for the jury on that claim. If Defendants need time for discovery on that issue, Defendants shall state how much more time is needed.

   c. How and when Defendant DeWitt resubmitted Plaintiff for the peer educator position, and whether and when

Plaintiff began working in that position again, with affidavits from Nurse Puckett and Defendant DeWitt.

    d. How and when Warden Murray instructed DeWitt to remove Plaintiff from the peer educator position, with an affidavit from Warden Murray.

5. Attorney Esther J. Seitz is appointed as Plaintiff's pro bono counsel. The clerk is directed to inform the pro bono coordinator of the appointment. The clerk is directed to send a copy of this order to Ms. Seitz and to add Ms. Seitz to the caption.

6. Plaintiff's motion to interview nonparty witnesses is denied (44). If Plaintiff's counsel determines that additional discovery is needed, then Plaintiff's counsel may file an appropriate motion.

7. A status conference is set for Friday, January 30, 2015, at 2:45 p.m. Plaintiff shall appear by video conference. Counsel shall appear in person.

8. A final pretrial conference is set for May 18, 2015, at 2:30 p.m. Plaintiff shall appear by video conference. Defense counsel shall appear in person.

9. This case is set for jury selection and trial on the Court's trailing trial calendar for June 2, 2015, but this is not a firm trial date. This Court's congested trial calendar makes it difficult to give a date certain for the trial. The parties should be ready to go to trial at any time after the final pretrial conference, and a trial will be scheduled when an opening appears. If the parties prefer a date certain, they might consider consenting to the Magistrate Judge. The clerk is directed to send consent forms to the parties for their consideration.

ENTERED:  1/26/2015

FOR THE COURT:

**s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE
